IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHAD DON KILLIAN, an individual; ROGELIA ROBLES KILLIAN, an individual, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> BIG WATER MUNICIPAL CORPORATION; WILLIAM ALAN MARSHALL, an individual; ALAN K. THOMPSON, an individual; BOUDICCA JOSEPH, an individual; SHERI HILL, an individual; GERALD M. KING, an individual, <br><br> Defendants. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br><br><br> Case No. 2:05-CV-00541 PGC |

At one point, in 2004, both Chad Killian and his wife, Rogelia Killian, were employed by the Town of Big Water, Utah. Mr. Killian worked as Town Marshal, and Ms. Killian worked as a clerk/recorder. At the time the Killians were fired from their positions in September 2004, both were probationary employees. But the Killians claim their respective terminations violated their constitutionally-protected property interests in continued employment with the town, in violation of 42 U.S.C. § 1983. The court finds neither of the Killians had any such property right; therefore, their respective claims of a property rights violation fail. Mr. Killian also argues the

defendants interfered with his constitutional liberty interests by publishing false and stigmatizing statements about him after his termination.  This claim also fails because Mr. Killian has not established the alleged statements were ever published.  The court, therefore, GRANTS summary judgment to the defendants with regard to all of the Killians' claims.  Further, the court DENIES the defendants' request for declaratory or injunctive relief.  Finally, after reviewing the fully-developed and detailed briefs, the court finds the outcome of this case to be so clear that oral arguments are unnecessary.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[1]  Viewed in this light, the record reflects the following facts.

Chad Don Killian began working for the Town of Big Water, Utah, in April 2004, as a deputy town marshal.  In June 2004, the mayor of the town, William Marshall, appointed Mr. Killian to the position of Town Marshal, in accordance with his authority under the Utah Code.[2] The town council approved Mr. Killian's appointment.  As Town Marshal, Mr. Killian was the head of the local law enforcement agency (the Marshal's Department) and reported directly to the mayor.  The town paid him a flat salary, with no overtime for additional hours worked.

In May 2004, Mr. Killian allegedly discovered pornography on the Marshal's Department computer.  Around that same time, he informed the mayor the computer had pornography on it,

---

[1] *See Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).

[2] *See* UTAH CODE ANN. §§ 10-3-808, -809.

and he promised to "tak[e] care of it."[3]  But the only real step Mr. Killian took to address the problem — even after he became Town Marshal — was to not use the computer.  The Marshal's computer was not password-protected when Mr. Killian started working as Town Marshal.  Mr. Killian put a password on it himself at some point, but various other law enforcement officers had access to the password and login and to the computer.  Even after he found the pornography, Mr. Killian never changed the password or login.  Mr. Killian took no action to successfully remove the pornography from the computer.  In fact, Mr. Killian never asked any other agency to investigate the pornography until the mayor accused Mr. Killian himself of having pornography on the computer.  And Mr. Killian never mentioned the pornography to his wife.

At some point, Mr. Killian's relationship with the mayor started changing.  Mr. Killian admitted the change was largely because he and the mayor had divergent law enforcement philosophies.  By September 2004, Mr. Killian's relationship with the mayor had deteriorated to the point that he and the mayor hardly ever spoke.  Several times during the course of his employment, Mr. Killian used the town-owned, dash-mounted equipment to tape record conversations with the mayor and other town officials.  Mr. Killian justified this by saying he had learned that superiors "were not to be trusted, and it was a good idea to CYA."[4]  Mr. Killian never informed any of these parties that he was recording the conversations.

On September 17, 2004, the mayor confiscated the computer used by the Marshal's Department.  That same day, the computer was turned over the Robert C. Margerison.  Mr.

---

[3] C. Killian Dep. 29–30.

[4] *Id.* at 39–40.

Margerison inspected and documented the contents of the computer's hard drive.  He then

prepared a written report cataloguing the pornographic and adult materials on the hard drive.  The

Killians make much of the fact that the computer in Mr. Killian's office was a Hewlett-Packard

and Mr. Margerison's report indicated he analyzed a Dell hard drive.  But in light of Mr.

Margerison's later explanation that he had noted the incorrect brand in his report, the original,

incorrect listing is a non-issue.

On September 22, 2004, the mayor confronted Mr. Killian again about the pornography

on the computer, and asked Mr. Killian if he was responsible for it.  Mr. Killian denied

responsibility.  On September 23, 2004, the mayor terminated Mr. Killian's employment with the

town.  At the time of his termination, the mayor told Mr. Killian he had been fired without cause

because he was an at-will employee.

After his termination, Mr. Killian requested an appeal.  The town retained outside legal

counsel, Lisa-Michele Church, to advise it on Mr. Killian's appeal request.  Ultimately, the town

allowed Mr. Killian to pursue his appeal.  On December 13, 2004, the town held an appeal

hearing.  The hearing lasted around five hours and was open to the public.  In the end, the appeals

board upheld Mr. Killian's termination.

Mr. Killian makes various allegations about the conduct of the appeals board.  The court

outlines them here, although they largely constitute unsupported, inadmissible hearsay.  First, he

alleges that the comments made by Alan Thompson, the town's attorney, defamed him.

Specifically, Mr. Killian alleges Mr. Thompson wrongfully urged the appeals board to reconsider

a decision initially favorable to Mr. Killian.  Next, he alleges town council member, Boudicca

Joseph, defamed him by encouraging a radio airing of Mr. Killian's termination along with an explanation that the basis of it was Mr. Killian's viewing of pornography on the Marshal's Department computer.  Mr. Killian also alleges another council member, Sheri Hill, called him a pervert.  Ms. Hill was an elected member of the town council who sat on the appeals board.  Allegedly, these statements were made during non-public, closed meetings regarding Mr. Killian's fitness and character for the position of Town Marshal.

The Killians also allege the mayor defamed Mr. Killian during a radio interview by saying he had fired Mr. Killian for viewing pornography on his computer.  But the only evidence the Killians provided of this is a grainy photocopy showing an audio tape that has been disassembled.  The only radio interview the Killians actually did produce related to Mr. Killian progressed as follows:

> Interviewer:   Just give us an update.  Is there an appeals hearing going on with the Marshal that you fired?
>
> Mayor:   Yeah.  The appeals hearing will be on December 13th.  I really don't have much to do with that.  I mean I'll be there but I'm not conducting it or anything.
>
> Interviewer:   Who is conducting it?
>
> Mayor:   It's set up by state law.  Mr. Killian will be represented by his own attorney.  The Town will be represented by an attorney from the Utah Local Governments Trust who handles lawsuits against towns and things.[5]

The Killians argue that the fact that the interviewer asked for "an update" establishes the fact of the prior defamatory interview.  The court has found every reasonable inference in the Killians' favor, but the inference the Killians ask the court to draw from this language is simply not

---

[5] Mem. Opp'n to Mot. Summ. J., at x (Docket No. 40).

reasonable.

The town never penalized Mr. Killian other than to terminate his employment.  Mr.

Killian has presented no evidence (and has not even argued) that any prospective employer ever

contacted the town or any town officials regarding employing Mr. Killian, or that the town or any

town official ever informed a prospective employer as to the reasons for Mr. Killian's

termination.

Mr. Killian's wife, Rogelia Killian, also worked for the Town of Big Water during some

of the same time period.  On June 7, 2004, she started working for the town as the clerk/recorder.

The mayor appointed Mrs. Killian to that position, and the town council approved the

appointment.  Mrs. Killian worked less than half time — an average of 17.5 hours per week.  On

September 24, 2004, the mayor terminated Mrs. Killian — no statement of cause appears in the

record.  Mrs. Killian sought to appeal the termination of her employment, but the town denied

her an appeal hearing because of her status as an appointed employee.

## STANDARD OF REVIEW

Actions for damages provide an important remedy for those injured by abuse of

governmental authority, but such actions also have potential to subject officials to harassing,

costly litigation, and to inhibit performance of their duties.[6]  The affirmative defense of qualified

immunity balances these competing interests by protecting "all but the plainly incompetent or

those who knowingly violate the law."[7]  Government officials are entitled to qualified immunity

---

[6] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[7] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"in all but the most exceptional cases."[8]  Whether qualified immunity exists is a "purely legal question."[9]

Due to the underlying purposes of qualified immunity, courts evaluate summary judgment motions in qualified immunity cases differently than general summary judgment motions.[10]  After a defendant asserts a qualified immunity defense, the plaintiff has the burden of satisfying a two-part test.[11]  As part of this "heavy two-part burden,"[12] the plaintiff must establish the defendant's acts or omissions violated a constitutional or statutory right.[13]  Next, the plaintiff must show the right at issue was clearly established at the time of the defendant's unlawful conduct.[14]  If the plaintiff succeeds in demonstrating a violation of a clearly established right, the defendant has the burden to prove "there are no genuine issues of material fact and he or she is entitled to judgment as a matter of law."[15]

Although the court views the evidence in the light most favorable to the nonmoving party, the record must clearly establish the plaintiff has satisfied its heavy two-part burden; otherwise,

---

[8] *Tonkovic v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998).

[9] *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

[10] *Nelson v. McMullen*, 207 F.3d 1202, 1205–06 (10th Cir. 2000).

[11] *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).

[12] *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

[13] *Id.*

[14] *Id.*

[15] *Id.* at 1535 (citing *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

the defendants are entitled to qualified immunity.[16]  The Killians have not met their burden with regard to any of their claims.

## DISCUSSION

The Killians bring their suit for damages and an injunction under 42 U.S.C. § 1983. Basically, they claim the defendants violated Mrs. Killian's constitutional rights by discharging her in violation of their town policy and failing to afford her a right to appeal her discharge.  The Killians also claim the defendants wrongfully discharged and defamed Mr. Killian in violation of his constitutional rights.  They ask the court to enjoin the defendants from making false statements about Mr. Killian or defaming his character.

At the outset, the court notes that the defendants have filed motions to strike portions of the affidavits of Heidi Essex, Chad Killian, and Jason Jensen.  The court finds the defendants' arguments with respect to the hearsay nature and privileged nature of the statements made at the closed meetings of the appeals board and the town council to be compelling.  But because Mr. Killian's claims fail even if the court were to find the statements admissible, the court need not address the defendants' motions to strike.

## I.    Wrongful Termination — Infringement of the Killians' Property Interests

For the defendants to have violated the Killians' constitutional rights by terminating them, the Killians would need to have a constitutionally-protected interest in their jobs with the Town of Big Water.  In other words, only if the Killians had a constitutional property interest in their employment could they potentially have a claim for the wrongful deprivation of that

---

[16] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

interest.  Because the Killians had no such interest, their claim of wrongful termination in violation of § 1983 fails.

A municipality must provide plaintiffs with due process before termination if the plaintiffs can prove they have a property interest in their employment.[17]  "A protected property interest in continued employment exists only if the employee has a legitimate claim of entitlement to continued employment."[18]  Property interests do not spring from the Constitution. Rather, they "arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings"[19] — such interests are determined under state law.[20] And it is the plaintiff's burden to establish the existence of a protected property right.[21]

The "hallmark of property is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"[22]  Therefore, "[w]hen a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment."[23]  In other words, "if a statute, regulation, or policy specifies the grounds on which an employee may be discharged, or

---

[17] *Dickeson v. Qaurberg*, 844 F.2d 1435, 1438 (10th Cir. 1988).

[18] *Id.* at 1437.

[19] *Id.*

[20] *Id.* at 1438 n.5.

[21] *Watson v. Univ. of Utah*, 75 F.3d 569, 578 (10th Cir. 1996).

[22] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982).

[23] *Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quoting *West v. Grand County*, 967 F.2d 362, 366 (10th Cir. 1992)).

restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown."[24]  But if the statute, regulation, or policy simply provides detailed procedural protections, in the absence of substantive restrictions on the ability to terminate the employee, no property right arises.[25]

Because the facts and the applicable statutes with respect to each plaintiff's claims are unique, the court deals with them separately here.  Both the Killians' claims fail, but the court addresses Mrs. Killian's claim first, as it is the most meritorious of the failed arguments.

(A.)    *Mrs. Killian's Claim*

Mrs. Killian argues her property interest in her employment with the Town of Big Water was unconstitutionally violated when the mayor terminated her.  In support of this, Mrs. Killian rests heavily on the fact that a town policy requires that discharged probationary employees be given a hearing by the town council, upon demand.  But because this is a procedural protection, as opposed to a substantive restriction on termination, Mrs. Killian had no property right in her employment — no right for the defendants to violate.

It is undisputed that Mrs. Killian was a probationary employee.  In fact, the town policy Mrs. Killian relies upon to support her claim applies only to probationary employees.  It is also undisputed that Mrs. Killian was a part-time employee — working an average of 17.5 hours a week.  Under Utah Code, a probationary employee of a municipality has no statutory protections

---

[24] *Asbill v. Housing Auth. of Choctow Nation*, 726 F.2d 1499, 1502 (10th Cir. 1984).

[25] *Id.* at 1502–03.

from termination, and no procedural protections upon termination.[26]  The same lack of protection

extends to part-time employees.[27]  In other words, no state statute "specifies the grounds on

which an employee may be discharged, or restricts the reasons for discharge to 'just cause

shown.'"[28]  Because state law provides Mrs. Killian with no property interest in her continued

employment, any such interest must spring from another source.  The only source to which Mrs.

Killian cites is the following policy of the Town of Big Water:

> The Mayor shall have the power to suspend, with or without pay, or demote or
> discipline any town employee, or discharge any appointed official or municipal
> employee for good cause, subject to the consent of the Council at the next regular
> meeting.
>> (1)     Notwithstanding the above, any probationary employee (i.e., an
>>          employee in the first year of employment) may be discharged after
>>          evaluation, consultation and warning, without any requirement for the
>>          Municipality to show cause.
>>> (a)      A probationary employee so discharged shall, upon demand,
>>>           be given a hearing by Council in executive session to
>>>           determine if the decision to discharge was based upon any
>>>           reason contrary to law.[29]

The problem with Mrs. Killian's reliance on this policy is that it does nothing more than provide

a procedural protection.  It does not specify substantive grounds on which she may or may not be

discharged.

    In *Asbill v. Housing Authority of the Choctaw Nation*,[30] the Tenth Circuit faced a similar

---

[26] UTAH CODE ANN. §§ 10-3-1105, -1106.

[27] *See id.*

[28] *Asbill*, 726 F.2d 1499, 1502 (10th Cir. 1984).

[29] Town of Big Water, Utah, Policy 10.3.

[30] 726 F.2d 1499 (10th Cir. 1984).

situation.  In *Asbill*, the plaintiff, an employee of the housing authority, refused to recognize the new board of commissioners of the housing authority that had been recently installed into office. Instead, the plaintiff sat with the old board at a public meeting, seemingly in protest of the authority of the new board.  Immediately after the meeting, the head of the new board prepared the plaintiff's letter of termination — effective the next day.  The plaintiff sued pursuant to § 1983, alleging the defendant terminated her in violation of her due process rights.  In support of her claim, the plaintiff contended the grievance procedures for the housing authority supported her entitlement to employment.  These procedures basically granted permanent employees the right to a pre-termination hearing and to a two-week notice of dismissal.

The Tenth Circuit rejected the plaintiff's claim that these procedures somehow granted her a property right in her employment.

> [T]hese procedural protections do not support a 'legitimate claim of entitlement' to future employment.  At best, they merely support a claim of entitlement to the procedural protections themselves.  At least five circuits have adopted the view that procedural protections alone do not create a protected property right in future employment; such a right attaches only when there are substantive restrictions on the employer's discretion.[31]

Because the court found no evidence of a substantive restriction on the housing authority's power to terminate the plaintiff, the court considered her employment to be terminable at will.[32] Consequently, the court found the plaintiff possessed no property right in her continued employment.[33]  The fact that the housing authority violated their own policies by failing to

---

[31] *Id.* at 1502 (citations omitted).

[32] *Id.*

[33] *Id.*

provide the procedural protections to the plaintiff specifically, had no impact on the Tenth

Circuit's decision, presumably because such procedures were not required by due process in the

first place.

In Mrs. Killian's case, like in *Asbill*, the town's policy — at most — can be seen a

providing the procedural protection of an "evaluation, consultation and warning" and a post-

termination hearing.[34]  The plain language of the same policy makes clear, however, that no

cause is required for the termination of a probationary employee.  In other words, there are no

substantive restrictions on the mayor's or town's discretion.  Reasonableness requirements and

procedural protections fail to create protected property interests; thus, Mrs. Killian has no

protected property interest in her continued employment.  Just as in *Asbill*, the fact that the mayor

violated the policy by terminating Mrs. Killian without an evaluation, consultation, or warning,

and the fact that the town council refused to grant her an appeal hearing does not change the

inquiry.  No reasonable fact-finder could find that such policy violations somehow grant Mrs.

Killian a protected property right in her employment.

With regard to Mrs. Killian, this is the end of inquiry.  Because Mrs. Killian has no

protected property right in her continued employment, the mayor and the Town of Big Water

cannot have violated her constitutional rights simply by terminating her employment at will.

Therefore, the court grants summary judgment to the defendants with regard to Ms. Killian's

claim.

---

[34] Town of Big Water, Utah, Policy 10.3.

*(B)     Mr. Killian's Claim*

Mr. Killian's claim of wrongful discharge in violation of § 1983 is even weaker than Mrs.

Killian's claim.  As with Mrs. Killian's claim, Mr. Killian's claim fails because he has not shown

he had any type of a protected property interest in his continued employment with the Town of

Big Water.

In Utah, certain employees are specifically exempted from any kind of protected

employment status, such as:

(a)     *an officer appointed by the mayor* other person or body exercising executive
        power in the municipality;
(b)     a member of the municipality's police department or fire department who is
        a member of the classified civil service in a first or second class city;
(c)     *a police chief of the municipality*;
(d)     a deputy police chief of the municipality;
(e)     a fire chief of the municipality;
(f)     a deputy or assistant fire chief of the municipality;
(g)     *a head of a municipal department*;
(h)     a deputy of a head of a municipal department;
(i)     a superintendent;
(j)     *a probationary employee of the municipality*;
(k)     a part-time employee of the municipality; or
(l)     a seasonal employee of the municipality.[35]

Under Utah law, the duties of a police chief are synonymous with those of a town marshal.[36]

And while Mr. Killian claims he was not a probationary employee, the town code defines

probationary as "an employee in the first year of employment,"[37] which Mr. Killian concedes he

was.  Therefore, as the emphasized language reveals, Mr. Killian, as Town Marshal, fell into four

---

[35] UTAH CODE ANN. § 10-3-1105(2) (emphasis added).

[36] *See id.* § 10-3-919.

[37] Town of Big Water, Utah, Policy 10.3.

separate and distinct classes of non-protected employees.  Accordingly, Mr. Killian had

absolutely no protected interest in his employment under Utah law.  He has not even argued that

any substantive limits existed on the ability of the mayor or the town to terminate him.  And

unlike Mrs. Killian, Mr. Killian cannot cite to any procedural deficiencies by the town.

The bulk of Mr. Killian's other arguments rest on the assumption that he had a protected

property right.  Accordingly, his other arguments fail.  For example, Mr. Killian argues the

hearing the town afforded him was unfair.  Specifically, Mr. Killian contends the hearing was fair

and adequate up until Mr. Killian prevailed on the first vote — by three to two.  But after Mr.

Thompson mentioned the possibility of Mr. Killian as a disgruntled employee, the appeals board

re-cast their votes and decided to support the termination of Mr. Killian.  Mr. Killian argues this

negated the fairness and adequacy of the hearing.  But really, what happened at the hearing is a

non-issue in light of the fact that Mr. Killian had no property interest in his continued

employment to begin with — the town was not required to afford him a hearing at all.  In other

words, the hearing was surplusage, not a due process entitlement.  Because Mr. Killian had no

constitutionally-protected interest in his continued employment with Big Water, his claim that his

termination violated § 1983 fails.

Finally, the court notes that the Killians have tried to craft a conspiracy theory-type

termination argument based on a local judge's alleged disagreement with the way Mr. Killian

handled a particular criminal investigation.  But the Killians offers absolutely no evidence to

support his claim that any of these alleged events affected the mayor's termination decision.

Instead, he makes blanket, assumptive statements like "it[']s obvious that the true reasons for the

acrimony between the parties was due to the problems existing between Judge King and Marshal Killian."[38]  Like the Killians' other arguments, though, even if this were true, it would have no impact on the existence of a property interest in Mr. Killian's continued employment.  Since the showing of a property interest is a necessary foundation for Mr. Killian's wrongful discharge claim, arguments such as this are irrelevant.

**II.     Defamation –– Infringement of Mr. Killian's Liberty Interest**

Mr. Killian's remaining claims also rest on § 1983.  Specifically, Mr. Killian contends that the mayor violated his constitutional rights by making false, stigmatizing statements about him, and that the mayor and others disseminated and published statements that defamed his character.

The court has had some difficulty ascertaining Mr. Killian's remaining legal claims.  Mr. Killian entitles his claims "false statements" and "defamation of character."  But the only differences between Mr. Killian's false statement claim and his defamation of character claim is that in one, he says the mayor "initiated and planned" the statements with others,[39] and in the other, he says the mayor and others "disseminated and published" the statements.[40]  In their memoranda, the Killians treat the claims as one and do not argue the claims are distinct.  In the end, both claims seem to boil down to the same claim.

Mr. Killian also fails to state the legal basis for his claim with any specificity.  From what

---

[38] Mem. Opp'n to Mot. Summ. J., at vi (Docket No. 40).

[39] Complaint 17.

[40] *Id.* at 18.

the court can tell from the cases he cites, Mr. Killian seems to contend the defendants violated

his liberty interest in employment.  A public employee's right to allege a deprivation of liberty of

employment is limited.  Basically, to successfully claim deprivation of liberty, an employee must

show her dismissal "resulted in the *publication* of information which was *false* and *stigmatizing*

— information which had the general effect of curtailing her future freedom of choice or

action."[41]  The plaintiff must satisfy a four-part test.

> First, to be actionable, the statements must impugn the good name, reputation, honor,
> or integrity of the employee.  Second the statements must be false.  Third, the
> statements must occur in the course of terminating the employee or must foreclose
> other employment opportunities.  And fourth, the statements must be published.[42]

To be stigmatizing, statements "must rise to such a serious level as to place the employee's good

name, reputation, honor, or integrity at stake."[43]  In this regard, "circumstances which make an

employee 'somewhat less attractive' to employers would hardly establish the kind of 'foreclosure

of opportunities amounting to a deprivation of liberty.'"[44]

In *Asbill*, the plaintiff claimed the housing authority director's termination letter

stigmatized her, thereby limiting her freedom to pursue other employment.[45]  In the letter, the

director listed the reason for the plaintiff's termination as the fact that she refused to recognize

the authority of the new board.  The plaintiff contended that the housing authority violated her

---

[41] *Asbill*, 726 F.2d at 1503 (citations omitted).

[42] *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

[43] *Asbill*, 726 F.2d at 1503 (citations omitted).

[44] *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 574 n.13 (1971))

[45] *Id.*

liberty interest without due process because it denied her the chance to rebut this statement at a hearing.  The Tenth Circuit, however, rejected the plaintiff's claims.  First, the Circuit noted the plaintiff's admission that the reason for her discharge, as stated in the letter, was true.  Next, the court determined there was no evidence the statements were published outside of state government and "such intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'"[46]  Finally, although the Tenth Circuit noted that termination itself can be stigmatizing, the court found it "doubtful" that the director's statements could be considered stigmatizing.[47]

In the case at hand, Mr. Killian only named the mayor as a defendant with respect to his liberty claims.  But he references statements by others in his memorandum in opposition to the defendants' motion, so the court addresses them here.  First, he alleges Mr. Thompson, the town attorney, by providing legal advice to the appeals board during the hearing, defamed him.  According to Mr. Killian, Mr. Thompson spoke with the board about the possibility of Mr. Killian being a disgruntled employee if they retained him.  Next, he alleges Mr. Joseph, a town council member, defamed him by encouraging that it be aired on the radio that the town fired Mr. Killian for viewing pornography on the Marshal Department's computer.  Mr. Killian also alleges Ms. Hill, a town council member, defamed him by calling him a pervert.

Even assuming these statements were made and were false and stigmatizing, Mr. Killian has not established they violated his liberty because, for one thing, he provided no evidence any

---

[46] *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976)).

[47] *Id.*

of these statements were published outside of local government.  In fact, Mr. Killian does not

even contend the statements were made in any public forum.  Instead, he alleges the statements

were made during non-public closed sessions specifically held for the purpose of discussing Mr.

Killian's fitness and character for the position of Town Marshall.  In other words, the statements

were made only to participants in those meetings.  Mr. Killian also admits his knowledge of the

statements came from hearing participants.  Mr. Killian's failure to allege that anyone published

these statements outside the government agency is fatal to his claim because, as noted in *Asbill*,

"such intra-government dissemination, by itself, falls short of the Supreme Court's notion of

publication: 'to be made public.'"[48]

Mr. Killian's only other claim of an allegedly publicized false and stigmatizing

statements relates to the alleged radio and newspaper statements by the mayor relating to Mr.

Killian's termination.  Mr. Killian has claimed the statements related to him using an office

computer to view Internet pornography.  But Mr. Killian has presented absolutely no evidence

the mayor or any other town official made such a statement, let alone that it was published in a

newspaper or on the radio.  The only evidence of any radio interview is the transcript provided —

a transcript showing no indication of any disparaging remarks about Mr. Killian or his

termination.  And Mr. Killian provided no evidence of defamatory newspaper statements.

Further, when the defendants challenged Mr. Killian with regard to his lack of evidence, his only

response was to attach as an exhibit to Jason Jensen's deposition what he claims to be "a copy of

the destroyed tape" containing the allegedly inflammatory radio interview.  This "copy of the

---

[48] *Id.* (citing *Bishop*, 426 U.S. at 348).

tape" is simply a grainy picture of a destroyed audio tape.  The court is surprised that Mr. Killian would submit such a thing as evidence that the mayor made disparaging statements about Mr. Killian during a radio interview.  It would be impossible for the court to reasonably draw such an inference from this "evidence."  Therefore, the court has no choice but to find that Mr. Killian has presented no evidence of defamatory statements published about Mr. Killian by the mayor. Because Mr. Killian's bare allegations are insufficient to support a claim of publication, this claim fails.

Finally, Mr. Killian claims the appeals hearing he was granted was insufficient to meet the procedural protections due process requires for a liberty of employment violation because Mr. Thompson interfered with the appeals council's otherwise fair determination.  Even ignoring that Mr. Thompson's communications with the appeals counsel appear to be protected under Utah law, the hearing is a non-issue because the defendants did not implicate Mr. Killian's liberty interests.  In other words, a "name clearing hearing" (as Mr. Killian calls it) was not required in the first place.

## III.    The Killians' Motion for Declaratory Relief and Summary Judgment

The Killians also ask that the defendants be barred from relying on the appeals board's vote in favor of Mr. Killian's termination, and they mention the threat of ongoing damage to Mr. Killian's reputation.  But the Killians have done nothing to show declaratory or injunctive relief is proper.  Indeed, the Killians have made no effort to address the legal components of injunctive relief.[49]  Rather, the Killians moved for declaratory relief and summary judgment on the same

---

[49] *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

grounds as they opposed the defendants' motion for summary judgment. Because the court has already addressed these grounds and determined that they fail to support the Killians' claims, the court must deny the Killians' motion for summary judgment and declaratory relief.

The court finds it necessary to briefly address one additional argument from the Killians' motion for declaratory judgment. Basically, in their memorandum, the Killians imply that because qualified immunity "does not provide immunity from suit for declaratory or injunctive relief,"[50] their declaratory judgment claims are somehow immune from summary judgment. This is not true. Even removing the court's review from the realm of qualified immunity and looking at the Killians' claims and the record presented using a pure summary judgment standard,[51] the Killians' claims fail.

## CONCLUSION

The court GRANTS the defendants' motion for summary judgment [#27], DENIES the plaintiffs' motion for summary judgment and declaratory judgment [#29], and finds the defendants' motions to strike affidavits [#32, #48] to be MOOT. The clerk's office is directed to enter judgment accordingly and to close the case.

DATED this 31st day of May, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[50] *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 1993).

[51] *See* Fed. R. Civ. P. 56(c).